UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTOR COYOTL CUAYA, *on behalf of himself and a class of similarly situated individuals*,<br><br>Plaintiff,<br><br>v.<br><br>VI DEVELOPMENT GROUP, LLC d/b/a/ BREAD & BUTTER, *et al.*,<br><br>Defendants. | No.: 19 Civ. 4290 (JLC) |

## MOVING DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS AGAINST PLAINTIFF AND PLAINTIFF'S COUNSEL

Eli Z. Freedberg
Gary Moy
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022
212.583.9600

*Attorneys for Moving Defendants*

## TABLE OF CONTENTS

PAGE

FACTUAL BACKGROUND ................................................................................................. 1

ARGUMENT .......................................................................................................................... 6

I.  PLAINTIFF AND PLAINTIFF'S COUNSEL SHOULD BE SANCTIONED FOR PARTICIPATING IN BAD FAITH AT MEDIATION ........................................... 7

II. MOVING DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES FOR TIME SPENT BY DEFENSE COUNSEL PREPARING FOR AND ATTENDING THE COURT ORDERED MEDIATION, AS WELL AS PREPARING THE MOTION FOR SANCTIONS ........................................................... 10

CONCLUSION ..................................................................................................................... 13

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany,
    522 F.3d 182 (2d Cir. 2008)...................................................................................................11

Bergerson v. N.Y. State Office of Mental Health, Central N.Y. Psychiatric Ctr.,
    652 F.3d 277 (2d Cir. 2011)...................................................................................................11

Blum v. Stenson,
    465 U.S. 886 (1984)................................................................................................................12

Chen v. Marvel Food Services, LLC,
    No. 15 CV 6206 (JMA) (AYS), 2016 WL 6872626 (E.D.N.Y. Nov. 21, 2016).......................9

Cretella v. Liriano,
    370 F. App'x 157 (2d Cir. 2010) .............................................................................................6

Davey v. Dolan,
    453 F. Supp. 2d 749 (S.D.N.Y. 2006)......................................................................................6

Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Research,
    286 F. Supp. 3d 585 (S.D.N.Y. 2018), *aff'd sub nom.* Errant Gene
    Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research, No. 15 Civ.
    2044 (AJN) (SDA), 2018 WL 3094913 (S.D.N.Y. June 21, 2018), *aff'd*, 768
    F. App'x 141 (2d Cir. 2019) ..................................................................................................12

Fisher v. SmithKline Beecham Corp.,
    No. 07 CV 347, 2008 WL 4501860 (W.D.N.Y. Sept. 29, 2008).......................................... 8-9

Grenion v. Farmers Ins. Exchange,
    No. 12 CV 3219 (JS) (GRB), 2014 WL 1284635 (E.D.N.Y. Mar. 14, 2014) .........................9

Guillory v. Domtar Industries Inc.,
    95 F.3d 1320 (5th Cir. 1996) .................................................................................................10

MA Salazar, Inc. v. Village of Atl. Beach,
    499 B.R. 268 (E.D.N.Y. 2013) ................................................................................................8

Millea v. Metro-North R.R. Co.,
    658 F.3d 154 (2d Cir. 2011), *superseded on other grounds as recognized in*
    Acker v. General Motors, LLC, 853 F.3d 787 (5th Cir. 2017).................................................10

MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC,
    No. 16 Civ. 8103 (LGS), 2017 WL 1194372 (S.D.N.Y. Mar. 30, 2017) ...............................12

N.Y. State Ass'n for Retarded Children, Inc. v. Carey,
    711 F.2d 1136 (2d Cir. 1983)..................................................................................................11

Nick v. Morgan's Foods, Inc.,
    270 F.3d 590 (8th Cir. 2001) ...................................................................................................9

Oliveri v. Thompson,
    803 F.2d 1265 (2d Cir. 1986)...................................................................................................6

Outar v. Greno Industries, Inc.,
    No. 03 CV 916, 2005 WL 2387840 (N.D.N.Y. Sept. 27, 2005).................................................9

Perdue v. Kenny A. ex rel. Winn,
    559 U.S. 542 (2010)................................................................................................................10

Ransmeier v. Mariani,
    718 F.3d 64 (2d Cir. 2013)........................................................................................................6

In re Relativity Fashion, LLC,
    565 B.R. 50 (Bankr. S.D.N.Y. 2017).......................................................................................12

Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC,
    280 F.R.D. 147 (S.D.N.Y. 2012) ............................................................................................10

Rubio v. City of New York,
    No. 03 CV 1349 (SJ), 2005 U.S. Dist. LEXIS 40163, at *11-15) (E.D.N.Y.
    May 31, 2005)..........................................................................................................................12

Salovaara v. Eckert,
    222 F.3d 19 (2d Cir. 2000)........................................................................................................6

In re Stock Exchanges Options Trading Antitrust Litig.,
    No. 99 Civ. 0962 (RCC), 2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006)..................................11

Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic
    Republic,
    No. 10 Civ. 5256 (KMW), 2011 WL 4111504 (S.D.N.Y. Sept. 13, 2011) ..............................6

TufAmerica Inc. v. Diamond,
    No. 12 Civ. 3529 (AJN), 2016 WL 1029553, at *5 (S.D.N.Y. Mar. 9, 2016),
    *reconsideration granted in part*, 2016 WL 3866578 (S.D.N.Y. July 12, 2016)
    and *reconsideration granted in part*, 2018 WL 401510 (S.D.N.Y. Jan. 12,
    2018) .......................................................................................................................................11

Vay v. Huston,
    No. 14 CV 769, 2015 WL 791430 (W.D. Pa. Feb. 25, 2015).................................................10

Defendants VI Development Group, LLC d/b/a BREAD & BUTTER, 570 KCBS CORP. d/b/a BREAD & BUTTER, 401 KCBS CORP. d/b/a BREAD & BUTTER, 462 BKCS LTD. d/b/a BREAD & BUTTER, BKCS LTD. d/b/a BREAD & BUTTER, TERENCE PARK, and BYUNG IL PARK (collectively, "Moving Defendants") submit this Memorandum of Law in support of their Motion for Sanctions against Plaintiff Victor Coyotl Cuaya ("Plaintiff") and Plaintiff's counsel, Lee Litigation Group, PLLC, for participating in bad faith at the Court-Ordered mediation. Plaintiff and Plaintiff's Counsel's conduct wasted both the mediator and Moving Defendants' time and caused Moving Defendants to unnecessarily incur significant expenses in preparing for and attending a mediation that Plaintiff's counsel clearly did not want but did not exercise the courtesy of cancelling.

## FACTUAL BACKGROUND

On May 10, 2019, Plaintiff – purportedly a former cook at two deli-style eateries owned by Defendants Food & Beyond LLC and BKCS Ltd. – commenced this action alleging, among other things, violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. (See Declaration of Eli Z. Freedberg, dated March 4, 2020 ("Freedberg Decl."), at ¶ 2) Lee Litigation Group, PLLC represents Plaintiff in this matter. (See id.)

Around the same time, Plaintiff filed a second lawsuit, under Case Number 19 Civ. 3992 (RA) (SDNY), against the same Defendants alleging that Defendants violated Internal Revenue Code, 26 U.S.C. § 7434, (the "IRC Action"). Lee Litigation Group, PLLC also represented Plaintiff in that action. (Freedberg Decl. at ¶ 3) Defendants moved to dismiss the IRC Action. In apparent recognition that the claims asserted in the IRC Action lacked merit and failed to state a claim upon which relief could be granted, Plaintiff and Lee Litigation Group, PLLC decided to dismiss the claims without even filing an opposition to the motion. (Id. at ¶ 4)

Defendants incurred approximately $9,866.56 in legal costs and fees as a result of investigating the claims asserted in the IRC Action and in filing their (unopposed) motion to dismiss these claims. (Id. at ¶ 5)

On July 30, 2019, the Honorable Ronnie Abrams, who at the time was the presiding judge over this Action, issued a mediation referral order (the "Order") pursuant to Local Civil Rule 83.9 because "[i]n the Court's experience, cases involving FLSA claims often benefit from early mediation." (Docket Entry No. 29; see also Freedberg Decl. at ¶ 6)  To facilitate mediation, the Court directed the parties to exchange certain discovery in advance of the mediation session. (Docket Entry No. 29)

In accordance with the Order, Plaintiff was required to "produce a spreadsheet of alleged underpayments and other damages." (Docket Entry No. 29; Freedberg Decl. at ¶ 6) Although the Order required Plaintiff to "produce existing documents that describe duties and responsibilities" and "produce any existing records of wages paid to and hours worked by the Plaintiff(s) (e.g., payroll records, time sheets, work schedules, wage statements and wage notices)", Plaintiff did not produce any documents to Defendants in connection with the mediation. (Freedberg Decl. at ¶ 8)  Plaintiff, through his counsel, produced a one-page summary of calculations of total alleged damages that was limited to damages purportedly incurred by Plaintiff. (Id. at ¶ 9) Plaintiff did not produce a spreadsheet of alleged underpayments to the putative class members. (Id.)

By contrast, in compliance with the Court's Order, Moving Defendants collected and defense counsel reviewed over a thousand pages of documents and produced over four hundred pages of time and payroll records. (Freedberg Decl. at ¶ at 7)  In further compliance with Mediation Program Procedures, and to facilitate settlement discussions, defense counsel

2

analyzed the documents produced in connection with assessing the parties' claims and defenses and drafted a mediation brief.  (Id.)

The Mediation Program allow parties to indefinitely adjourn or remove a case from mediation.  (See Procedures of the Mediation Program (12/26/2018), § 6(b), available at https://nysd.uscourts.gov/sites/default/files/2019-12/Mediation%20Program%20Procedures.final_.2018.pdf).  Neither Plaintiff nor Defendants sought to remove this case from mediation.  (Freedberg Decl. at ¶ 11)  Instead, pursuant to the Mediation Program Procedures (see § 6(a)), the parties conferred with the mediator and held a teleconference to schedule the mediation session, which the parties originally agreed to attend on November 6, 2019 and adjourned to December 3, 2019.  (Freedberg Decl. at ¶ 11; see also Undocketed entries dated August 28, 2019 and November 6, 2019).

On the day of mediation, plaintiff's counsel – Daniel Needham, an associate of Lee Litigation Group – attended the session with Plaintiff and a third person who was not immediately identified but who Defendants presumed to be a translator since Plaintiff's primary language is Spanish.  (Freedberg Decl. at ¶ 12)  However, during the course of the mediation, it became apparent that the third party was not a translator, but a "friend" of the Plaintiff.  (Id.; Declaration of Jonathan Y. Sue, dated March 4, 2020 ("Sue Declaration"), at ¶ 2)  Mr. Needham represented that the friend attended the session to support Plaintiff and keep him company during mediation.  (Freedberg Decl. at ¶ 12; see also Sue Decl. at ¶ 2)  At no point did Plaintiff, or anyone affiliated with Lee Litigation Group, PLLC seek advance permission for this non-party's attendance pursuant to § 9(h) of the Mediation Program Procedures.  (Freedberg Decl. at ¶ 12; see also Sue Decl. at ¶ 2)

3

Although Plaintiff's counsel brought Plaintiff's friend, counsel did not arrange for a translator's attendance at the mediation, which was needed because Plaintiff appeared not to speak or understand English. (Freedberg Decl. ¶ 13) As a result, at least for part of the mediation, Plaintiff could not participate in the mediation session. (Id.) As set forth in § 9(a) of the Mediation Program Procedures, each party must attend mediation:

> This requirement is critical to the effectiveness of the mediation process as it enables parties to articulate their positions and interests, to hear firsthand the positions and interests of the other parties, and to participate in discussions with the mediator both in joint session and individually. If a represented party is unable to attend a previously scheduled mediation because of a change of that party's availability, the party's attorney must notify the mediator immediately so that a decision can be made whether to go forward with the mediation session as scheduled or to reschedule it. Mediators are required to report to the Court if a party failed or refused to attend, or refused to participate in the mediation.

For most of the mediation, Plaintiff's counsel had no apparent way to explain to Plaintiff what Defendants were saying or what the mediator was attempting to communicate because Plaintiff and his counsel failed to arrange for an interpreter to be present. (Freedberg Decl. at ¶ 13) Towards the end of the mediation session, and after a significant delay, Mr. Needham placed a call to his office and arranged to have a Spanish-speaking person translate Defendants' settlement offers, the mediator's description of the events, and Defendants' concluding remarks to Plaintiff. (Freedberg Decl. at ¶ 14; see also Sue Decl. at ¶ 3))

During mediation, Plaintiff's counsel informed Defendants that Plaintiff would not make a settlement demand and would not even make a settlement demand in the total amount stated on the summary of purported damages that Plaintiff's counsel previously submitted to Defendants, which had represented Plaintiff's settlement demand. (Freedberg Decl. at ¶¶ 15-16; see also Sue Decl. at ¶¶ 3-9) Had Moving Defendants known this would be Plaintiff's position

4

during the mediation, Defendants would have tried to cancel the mediation; instead Moving Defendants did not seek permission to remove the case from the mediation protocol in reliance of Plaintiff's alleged damage calculation spreadsheet, which was limited to damages allegedly incurred by Plaintiff.  (Freedberg Decl. at ¶ 11; see also Sue Decl. at ¶¶ 9-10)

Plaintiff had worked at defendant Food & Beyond, LLC for only three weeks and did not know any of the employees at defendants' stores.  (Sue Decl. at ¶¶ 4-5)  As such, absent any notice, defense counsel did not expect the settlement posture by Plaintiff and his counsel to be that a settlement would be entertained *only* on a class basis.  (Sue Decl. at ¶¶ 4, 6-8)  Even so, in addition to withdrawing the previous settlement demand and refusing to make a demand to settle Plaintiff's claims, Plaintiff and Plaintiff's counsel refused to make a demand for class-wide settlement.  (Freedberg Decl. at ¶ 16)

Notwithstanding Plaintiff and his counsel's refusal to make a settlement demand, the mediation session lasted for approximately two hours, not including travel time.  (Freedberg Decl. at ¶ 17)  In connection with the mediation process, Moving Defendants incurred approximately $20,027.48 in legal fees, including reviewing and producing documents, analyzing the parties' claims and defenses and drafting the mediation brief, and preparing for and attending mediation.  (Freedberg Decl. at ¶ 18)  Additionally, Moving Defendants incurred approximately $1,587.52 in legal fees in connection with drafting the pre-conference motion letter regarding instant motion for sanctions against Plaintiff and his counsel, the full costs of which Moving Defendants will submit once the instant motion is fully briefed.  (Freedberg Decl. at ¶¶ 19, 23)

**ARGUMENT**

"[A]ny federal court … may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppression reasons.'" Ransmeier v. Mariani, 718 F.3d 64, 68 (2d Cir. 2013) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)). "The district court must find bad faith in order to impose such sanctions and bad faith must be shown by 'clear evidence' that the actions in question are taken for 'harassment or delay or … other improper purposes.'" Cretella v. Liriano, 370 F. App'x 157, 159 (2d Cir. 2010) (quoting United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991))

Courts also have powers to sanction parties under 28 U.S.C. § 1927, which provides that "[a]ny attorney … who so multiplies the proceedings in any case unreasonable and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonable incurred because of such conduct." See Davey v. Dolan, 453 F. Supp. 2d 749, 758 (S.D.N.Y. 2006) (sanctioning plaintiff pursuant to Section 1927 for "reasonable expenses incurred", including attorney's fees). Under § 1927, the Court must find "a clear showing of bad faith on the part of an attorney." Salovaara v. Eckert, 222 F.3d 19, 35 (2d Cir. 2000) (internal quotation marks and citation omitted). "Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986); see also Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic, No. 10 Civ. 5256 (KMW), 2011 WL 4111504, at *10 (S.D.N.Y. Sept. 13, 2011) (noting same).

6

### I. PLAINTIFF AND PLAINTIFF'S COUNSEL SHOULD BE SANCTIONED FOR PARTICIPATING IN BAD FAITH AT MEDIATION

It should go without saying that a plaintiff need not settle a matter if he elects not to do so. Nor is a plaintiff required to engage in settlement negotiations or participate in mediation if he prefers to litigate a matter through a motion to dismiss, summary judgement, or trial. For that reason, the Southern District of New York's Procedure of the Mediation Program allows plaintiff to opt out of the mediation program. See Procedures of the Mediation Program (12/26/2018), § 3(b). But Plaintiff and his counsel did not do so. Instead, they *chose* to proceed with mediation and cause the parties and the mediator to undergo the time-consuming and costly process associated with program – only to *refuse* to even make a settlement demand at mediation or arrange for a translator to be in attendance so that Plaintiff could participate and understand these discussions. Simply stated, this conduct should not be countenanced and Plaintiff and Plaintiff's counsel should be directed to apologize and pay reasonable attorneys' fees that they needlessly caused Moving Defendants to incur.

The Court, in its experience and judgment, believed that "cases involving FLSA claims often benefit from early mediation." (Docket Entry No. 29) If Plaintiff and his counsel disagreed with the Court, then they should have removed this case from mediation pursuant to § 6(b) of the Mediation Program Procedures and they had several opportunities to do so, including: (1) the moment the Court referred this case to mediation; (2) when the parties first conferred with the mediator to schedule the session for November 6, 2019; (3) when the parties again conferred with the mediator to reschedule the session for December 3, 2019; and (4) once Plaintiff and Plaintiff's counsel decided they would not even make a settlement demand – at which point, it would have been obvious that they should cancel mediation to save the parties' time and resources.

7

Moreover, Plaintiff's counsel's failure to arrange for a translator at the mediation meant that Plaintiff could not participate in mediation within the spirit of § 9(a) of the Mediation Program Procedures, which seeks to ensure that parties are able to "hear firsthand the positions and interests of the other parties, and to participate in discussions." It is impossible for Plaintiff and Plaintiff's counsel, absent intentional misconduct, to rationalize their behavior. See MA Salazar, Inc. v. Village of Atl. Beach, 499 B.R. 268, 274 (E.D.N.Y. 2013) ("A court may infer bad faith where the action was so completely without merit as to require the conclusion that they must have been undertaking for some improper purpose such as delay.').

Plaintiff's counsel failure to do remove this case from mediation and insistence to proceed to mediation – with knowledge that they would refuse to participate in any settlement discussions and that Plaintiff apparently could not understand a single word exchanged without an interpreter – is an obvious ploy to churn attorneys' fees and prolong litigation. The failure to cancel mediation (or notify the parties that Plaintiff and his counsel would not even make a settlement demand) is, at the very least, unprofessional and disrespectful of the mediator's and the parties' time and caused the parties to needlessly expend significant resources on a session that Plaintiff's counsel knew would be useless. Given that the success of the Mediation Program depends in large part on the participation of willing mediators, sanctions are warranted to deter such behavior and signal that the Court will not allow parties to brazenly waste a mediator's efforts with bad faith conduct.

Plaintiff's counsel's egregious conduct was clearly calculated to delay this litigation, manufacture an excuse to bill, and waste the time of the mediator, defense counsel, and this Court. Courts have sanctioned parties for participating in mediation in bad faith, and Plaintiff and Plaintiff's counsel's conduct similarly warrants sanctions. See Fisher v. SmithKline

Beecham Corp., No. 07 CV 347, 2008 WL 4501860, at *5-7 (W.D.N.Y. Sept. 29, 2008) (granting sanctions pursuant to the court's inherent powers and § 1927 based on defendant's failure to participate in mediation in good faith, which "caused Plaintiffs to unnecessarily incur expenses for no good reason" where defendant filed a motion for summary judgment the day before mediation when plaintiffs' counsel was already traveling to mediation, failed to advise plaintiffs of that filing or the argument on which it was based, failed to inform plaintiffs that it was unwilling to fully participate in mediation, and limited its offer to $1,000 to settle the matter unless plaintiff demonstrated why their claim was not time-barred; noting that, if defendants' intent known, plaintiffs could have opted out or asked for an adjournment of mediation, cancelled travel plans, and avoided the need to prepare mediation memorandum and incurring expenses); see also Chen v. Marvel Food Services, LLC, No. 15 CV 6206 (JMA) (AYS), 2016 WL 6872626, at *4 (E.D.N.Y. Nov. 21, 2016) (finding plaintiff's counsel "did not participate in good faith" where he doubled settlement demand minutes before settlement conference; "unjustified 'surprise' rendered both parties 'substantially unprepared to participate in the conference'"); Grenion v. Farmers Ins. Exchange, No. 12 CV 3219 (JS) (GRB), 2014 WL 1284635, at *6-8, 10 (E.D.N.Y. Mar. 14, 2014) (finding bad faith and granting sanctions against defendant who attended settlement conference with no settlement authority; ordering defendant to pay expenses incurred as a result of conduct and additional monetary sanctions); Outar v. Greno Industries, Inc., No. 03 CV 916, 2005 WL 2387840, at *3 (N.D.N.Y. Sept. 27, 2005) (affirming order granting sanctions against plaintiff who participated in mediation in bad faith; plaintiff "refused to have his attorney negotiate or speak on his behalf in terms of settlement"); Nick v. Morgan's Foods, Inc., 270 F.3d 590, 597 (8th Cir. 2001) (affirming order sanctioning party who did not participate in good faith in mediation where party failed to submit mediation

9

statement, representative at mediation had only $500 in settlement authority, and any offer over $500 required authority of representative available by phone); Guillory v. Domtar Industries Inc., 95 F.3d 1320, 1334-35 (5th Cir. 1996) (affirming sanctions for bad faith participation at settlement conference against party who failed to disclose lack of intent to settle; "[w]e cannot allow parties to waste the court's dispute resolution assets by pretending to support settlement while never intending to settle the case"); Vay v. Huston, No. 14 CV 769, 2015 WL 791430, at *5 (W.D. Pa. Feb. 25, 2015) (finding bad faith and granting sanctions where plaintiff never informed defendants that no demand would be made, plaintiff did not object when the case was referred to early neutral evaluation / mediation, and plaintiff "allowe[d] the evaluation session to turn into a three to four-hour mediation session during which she refused to even make a demand").

## II.   MOVING DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES FOR TIME SPENT BY DEFENSE COUNSEL PREPARING FOR AND ATTENDING THE COURT ORDERED MEDIATION, AS WELL AS PREPARING THE MOTION FOR SANCTIONS

"Monetary sanctions are appropriate to punish the offending party for its actions [and] to deter the litigant's conduct, sending the message that egregious conduct will not be tolerated." Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 157 (S.D.N.Y. 2012) (internal quotations omitted). The "starting point" in analyzing whether claimed attorney's fees are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case", *i.e.*, multiplying hour rate by hours expended. Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011), *superseded on other grounds as recognized in* Acker v. General Motors, LLC, 853 F.3d 787, 790 (5th Cir. 2017). There is a "strong presumption" that the lodestar represents the appropriate award. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546 (2010); Millea, 658 F.3d at 166.

10

The party seeking fees must support the application with contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). In determining whether an attorney's requested hourly rate is reasonable, the court should consider what "a reasonable, paying client would be willing to pay", which varies by practice area and location, and the court may adjust hourly rates to account for case-specific variables. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183-84, 192 (2d Cir. 2008); see also Bergerson v. N.Y. State Office of Mental Health, Central N.Y. Psychiatric Ctr., 652 F.3d 277, 289 (2d Cir. 2011) (courts look at "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.").

The Second Circuit's "forum rule" generally requires use of "the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." Bergerson, 652 F.3d at 289. Rates must be "in line with those rates prevailing in the community for similar services by lawyers of reasonable comparable skill, experience, and reputation." TufAmerica Inc. v. Diamond, No. 12 Civ. 3529 (AJN), 2016 WL 1029553, at *5 (S.D.N.Y. Mar. 9, 2016) (internal quotation marks and citation omitted), *reconsideration granted in part*, 2016 WL 3866578 (S.D.N.Y. July 12, 2016) and *reconsideration granted in part*, 2018 WL 401510 (S.D.N.Y. Jan. 12, 2018). Courts in this district have recognized that an "attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of the [reasonable hourly] rate." In re Stock Exchanges Options Trading Antitrust Litig., No. 99 Civ. 0962 (RCC), 2006 WL 3498590, at *9 (S.D.N.Y. Dec. 4, 2006).

As set forth above, Plaintiff's counsel's decision to proceed with mediation but refuse to engage in any settlement discussions at mediation, as well as failure to arrange for a translator to enable his client to participate, caused defense counsel (and the mediator) to waste an exorbitant amount of time in this litigation and demonstrates willful misconduct warranting a substantial monetary sanction. See Rubio v. City of New York, No. 03 CV 1349 (SJ), 2005 U.S. Dist. LEXIS 40163, at *11-15) (E.D.N.Y. May 31, 2005) (sanctioning plaintiff's counsel approximately $25,000 pursuant to the court's power and § 1927). Given his education and legal experience, the appropriate rate for defense counsel Eli A. Freedberg is $488.40 per hour, which is a reduction from his standard hourly rate of $650.00. See MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC, No. 16 Civ. 8103 (LGS), 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (approving as reasonable hourly rates $569.02 to $753.43 for associates and $874.60 to $1048.47 for partners); see also Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Research, 286 F. Supp. 3d 585, 588 (S.D.N.Y. 2018) (court approved hourly rates for partners of $765 and up to $450 for associates), *aff'd sub nom.* Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research, No. 15 Civ. 2044 (AJN) (SDA), 2018 WL 3094913 (S.D.N.Y. June 21, 2018), *aff'd*, 768 F. App'x 141 (2d Cir. 2019) Additionally, given his education and legal experience, the appropriate rate for work performed by defense counsel Sean Malley is $387.20 per hour, which is a reduction from his standard hourly rate of $565.00. See id. Moreover, Moving Defendants have agreed to the rates charged by their attorney and, as such, the rates reflect what the market will bear and are presumptively reasonable. See Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); In re Relativity Fashion, LLC, 565 B.R. 50, 69 (Bankr. S.D.N.Y. 2017).

According to contemporaneous time records, Messrs. Freedberg, Malley, and Levy spent approximately 14.9 hours, 30.6 hours, and 4.1 hours, respectively: (i) collecting, reviewing, and producing documents pursuant to the Mediation Referral Order; (ii) drafting and revising the mediation statement; and (iii) preparing for, travelling to and from, and attending mediation on December 3, 2019.  (See Freedberg Decl. at ¶ 18; Excerpts of Contemporaneous Timesheets, attached as Exhibit A to Freedberg Decl., at pp. 1-3)  Additionally, Mr. Malley spent 4.1 hours in connection with preparing the pre-motion conference letter regarding the instant motion for sanctions.  (See Freedberg Decl. at ¶ 19; Excerpts of Contemporaneous Timesheets, attached as Exhibit A to Freedberg Decl., at pp. 3-4)   Setting aside that this same Plaintiff and Plaintiff's counsel caused Moving Defendants to incur almost $10,000 in legal costs and fees in the related action for which Plaintiff stipulated to dismissal instead of filing an opposition to a Rule 12 motion to dismiss, due to Plaintiff and Plaintiff's counsel's vexatious tactics in this case, defense counsel unnecessarily wasted a total of 53.7 hours.  Accordingly, Moving Defendants respectfully submit that Plaintiff's counsel should be sanctioned in the amount of $21,615.00 plus fees associated with drafting the instant motion (which Moving Defendants will submit with their reply papers once the motion is fully briefed).

## **CONCLUSION**

For the foregoing reasons, Moving Defendants respectfully request that their motion for sanctions against Plaintiff and Plaintiff's counsel, Lee Litigation Group, PLLC, be granted in its entirety, together with such other and further relief as this Court may deem just and proper.

Date:   March 4, 2020
        New York, New York

/s/
Eli Z. Freedberg
Gary Moy
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York  10022.3298
212.583.9600
efreedberg@littler.com
gmoy@littler.com

*Attorneys for Moving Defendants*

14