USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/10/2020__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                         :

VICTOR COYOTL CUAYA, *on behalf of himself,*  :
*FLSA Collective Plaintiffs, and the Class,*     :

                                         :       **MEMORANDUM**
                           Plaintiff,   :       **ORDER**

                                         :
          -v-                        :       19-CV-4290 (JLC)

                                         :

VI DEVELOPMENT GROUP, LLC *d/b/a*     :
BREAD & BUTTER, *et al.,*            :

                                         :
                         Defendants.   :
-------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Plaintiff Victor Coyotl Cuaya, individually and on behalf of others similarly situated, brings this action for violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against defendants Terence Park, Byung Il Park, and seven corporate defendants that allegedly operate a chain of deli restaurants in Manhattan under the shared trade name "Bread & Butter" (together, "defendants"). Cuaya alleges that defendants willfully engaged in various unlawful employment practices, including by failing to pay required minimum and overtime wages and spread of hours compensation.

Cuaya now moves for conditional certification of a collective action on behalf of all of defendants' non-exempt employees and requests that the Court (1) conditionally certify the FLSA claim as a representative collective action pursuant to 29 U.S.C. § 216(b); (2) facilitate notice of this FLSA action to covered employees; (3) approve the proposed notice and consent form; (4) require defendants

to disclose the contact information for all potential members of the collective action as well as the Social Security numbers of all potential members for whom the notice is returned undeliverable; (5) require defendants to post the notice and consent forms in their place of business; and (6) equitably toll the statute of limitations until such time that Cuaya is able to send notice to potential opt-in plaintiffs.  For the reasons that follow, Cuaya's motion is granted in part and denied in part.[1]

## I.   PROCEDURAL HISTORY

Cuaya commenced this action on May 10, 2019, asserting claims against defendants VI Development Group, LLC d/b/a Bread & Butter, 570 KCBS Corp. d/b/a Bread & Butter, 401 KCBS Corp. d/b/a Bread & Butter, 462 BKCS Ltd. d/b/a Bread & Butter, BKCS Ltd. d/b/a Bread & Butter, K&H 14 Inc. d/b/a Bread & Butter, Food & Beyond LLC d/b/a Bread & Butter, Terence Park, and Byung Il Park.  Complaint, Dkt. No. 4.  On January 6, 2020, defendant K&H 14 Inc. was voluntary dismissed from this action.  Dkt. Nos. 55.[2]  The remaining parties

---

[1] As other courts have noted, in contrast to the requirements of Rule 23 pertaining to class actions, "neither the FLSA nor the Federal Rules of Civil Procedure provide for the certification of an FLSA collective action."  *Amendola v. Bristol–Myers Squibb Co.,* 558 F. Supp. 2d 459, 463 n.l (S.D.N.Y. 2008); *see also Zhongle Chen v. Kicho Corp.,* No. 18-CV-7413 (PMH)(LMS), 2020 WL 1900582, at *1 n.2 (S.D.N.Y. Apr. 17, 2020); *Tate v. WJL Equities Corp.*, No. 13-CV-8616 (JLC), 2014 WL 2504507, at *1 n.1 (S.D.N.Y. June 3, 2014).  Although Cuaya has styled his motion as one for "conditional certification," it is more appropriately characterized as a request for the Court to authorize notice to potential opt-in plaintiffs.  *Id.*

[2] Specifically, Cuaya moved for dismissal on the basis that the owner of K&H 14 Inc., through a signed affidavit, asserted that the Bread & Butter location at 14 East 44th Street was purchased by K&H Inc. in 2014 and has subsequently had no relationship to any of the other Bread & Butter locations.  Dkt. No. 54.

consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c) on January 30, 2020.  Dkt. No. 56.

On February 21, 2020, Cuaya moved for conditional certification of a putative class of all non-exempt employees employed by defendants within the last six years. *See* Notice of Motion, dated February 21, 2020 (Dkt. No. 64); Memorandum of Law in Support of Plaintiff's Motion for Conditional Collective Certification, dated February 21, 2020 ("Pl. Mem.") (Dkt. No. 65); Declaration of Victor Coyotl Cuaya in Support of Motion for Conditional Collective Certification, dated February 21, 2020 ("Pl. Dec.") (Dkt. No. 66).  Between March and May 2020, all defendants except Food & Beyond LLC requested and were granted three extensions of time to file a response to Cuaya's motion; Cuaya requested and was granted one extension of time to file his reply papers.  Dkt. Nos. 71–74, 80–81, 85–86.

Defendant Food & Beyond LLC filed four declarations in opposition to Cuaya's motion on April 8, 2020, asserting that it purchased the Bread & Butter location at 419 Park Avenue in 2014 and has no relationship with any of the other Bread & Butter locations.  *See* Dkt. Nos. 76–79.[3]  The other defendants filed a memorandum of law and five declarations in opposition to Cuaya's motion on May 27, 2020.  *See* Memorandum of Law in Opposition to Motion for Conditional Collective Certification ("Def. Mem.") (Dkt. No. 92); Declaration of Terence Park ("T. Park Dec.") (Dkt. No. 87); Declaration of Kia Tae Lee ("Lee Dec.") (Dkt. No. 88);

---

[3] Food & Beyond, which asserted cross-claims against its co-defendants in its answer to Cuaya's complaint, *see* Dkt. No. 37 ¶ 3, did not file a memorandum of law in opposition to Cuaya's motion.

Declaration of Chan Hee Park ("C. H. Park Dec.") (Dkt. No. 89); Declaration of Sang Jun Cho ("Cho Dec.") (Dkt. No. 90); Declaration of Seung Chul Back ("Back Dec.") (Dkt. No. 91). Cuaya filed reply papers on June 10, 2020. Reply Memorandum of Law in Support of Plaintiff's Motion for Conditional Collective Certification ("Pl. Reply") (Dkt. No. 95).

## II. DISCUSSION

### A. Conditional Collective Action Certification

The FLSA provides that "any one or more employees" may bring suit on behalf of themselves and other "similarly situated" employees who "consent in writing to become such a party." 29 U.S.C. § 216(b); *see also Xing Ye v. 2953 Broadway Inc.*, No. 18-CV-4941 (LAP), 2020 WL 2904070, at *2 (S.D.N.Y. June 3, 2020). "Although they are not required to do so by the FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

The Second Circuit has endorsed a two-stage certification process in determining whether to certify a collective action under the FLSA. *See Myers,* 624 F.3d at 554–55; *Martin v. Sprint/United Mgmt. Co.*, No. 15-CV-5237 (PAE), 2016 WL 30334, at *4 (S.D.N.Y. Jan. 4, 2016) (collecting cases). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to

whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555.  Although "[t]he

FLSA does not define the term 'similarly situated,'" the Second Circuit recently

explained that "to be 'similarly situated' means that named plaintiffs and opt-in

plaintiffs are alike with regard to some material aspect of their litigation."  *Scott v.

Chipotle Mexican Grill, Inc.,* 954 F.3d 502, 516 (2d Cir. 2020) (citing *Campbell v.

City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018)).  "That is, party plaintiffs

are similarly situated, and may proceed in a collective, to the extent they share a

similar issue of law or fact material to the disposition of their FLSA claims."  *Id.; see

also Pequero v. Montafon, LLC*, No. 18-CV-12187 (DF), 2020 WL 4016756, at *8

(S.D.N.Y. July 15, 2020) ("In accordance with the reasoning of *Scott*, the named

Plaintiffs need not show that there are *no dissimilarities* among them and other

employees, as 'they may proceed in a collective *to the extent* they share a similar

issue.'" (quoting *Scott,* 954 F.3d at 516) (emphasis added)).

     The requirements for conditional collective action certification are "unrelated

to" and less stringent than those for certifying a class under Rule 23.  *Scott,* 954

F.3d at 520.  A plaintiff's "burden is minimal because the determination that the

parties are similarly situated is merely a preliminary one, and that determination

may be modified or reversed after discovery."  *Weng Long Liu v. Rong Shing, Inc.*,

No. 12-CV-7136 (TPG), 2014 WL 1244676, at *2 (S.D.N.Y. Mar. 26, 2014) (citing

*Indergit v. Rite Aid Corp.,* Nos. 08-CV-9361 (PGG), 08-CV-11364 (PGG), 2010 WL

2465488, at *4 (S.D.N.Y. Jun. 16, 2010) (internal citation omitted)).  In determining

whether potential opt-in plaintiffs are similarly situated, courts should not "weigh

the merits of the underlying claims, attempt to resolve factual disputes, or evaluate credibility." *Aguilo v. Vails Gate Cleaners Inc.*, No. 18-CV-8850 (PMH) (JCM), 2020 WL 3545558, at *3 (S.D.N.Y. June 30, 2020) (citing *Morris v. Lettire Const. Corp.*, 896 F. Supp. 2d 265, 269 (S.D.N.Y. 2012)).  The role of the court at this stage is simply to decide whether the plaintiff has made a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555.

However, "while a plaintiff's 'burden of proof is low, it is not non-existent [and] certification is not automatic.'" *Sanchez v. JMP Ventures, L.L.C.*, No. 13-CV-7264 (KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (citing *Romero v. H.B. Auto. Grp., Inc.*, No. 11-CV-386 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012) (internal citations and quotation marks omitted)).  "Even at the conditional certification stage, a plaintiff's burden under § 216(b) 'cannot be satisfied simply by unsupported assertions,' or with 'conclusory allegations.'" *Zhongle Chen v. Kicho Corp.,* No. 18-CV-7413 (PMH)(LMS), 2020 WL 1900582, at *6 (S.D.N.Y. Apr. 17, 2020) (quoting *Myers*, 624 F.3d at 555; *Morales v. Plantworks, Inc.,* No. 05-CV-2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006)).  Instead, a plaintiff must offer "actual evidence of a factual nexus" between his situation and those of other allegedly similarly situated employees.  *Qing Gu v. T.C. Chikurin, Inc.*, No 12-CV-2322 (SJ) (MDG), 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014).

In the second stage, which occurs after discovery "when the Court has a more developed record, the named plaintiffs must prove that 'the plaintiffs who have

opted in are *in fact* 'similarly situated' to the named plaintiffs.'" *She Jian Guo v. Tommy's Sushi Inc.*, No.14-CV-3964 (PAE), 2014 WL 5314822, at *2 (S.D.N.Y. Oct. 16, 2014) (quoting *Myers*, 624 F.3d at 555).  At that stage, a defendant can move to decertify the collective if the record reveals that the claimants are not similarly situated, and their claims may be dismissed without prejudice.  *See id.*; *Myers*, 624 F.3d at 555.

### 1. Cuaya's Factual Showing in Support of Conditional Collective Action Certification

In support of his motion, Cuaya has submitted a declaration outlining the wage-and-hour violations that he alleges he and his coworkers experienced, as well as defendants' time-keeping and pay records practices with respect to his employment.  *See* Pl. Dec. ¶¶ 1–17; Pl. Reply, Ex. H.  Cuaya alleges that he was employed by defendants as a cook at two different Bread & Butter locations in Manhattan from 2010 until January 2019.  Pl. Dec. ¶ 1.  From 2010 to 2013, Cuaya worked at the Park Avenue location, and from 2013 until the end of his employment, he worked at the Fifth Avenue location.  *Id.*  However, Cuaya asserts that "it was common for employees to be assigned to any Bread & Butter location, as needed." *Id.*

Cuaya alleges as follows: from the beginning of his employment until December 31, 2016, he was paid below the statutory minimum wage.  *Id.* ¶ 7. Between 2010 and June 2013, he regularly worked six days a week for a total of 69 hours (11 hours a day for three days and 12 hours a day for three days).  *Id.* ¶ 5. During that time, he was paid a weekly salary of $450.  *Id.* ¶ 6.  Between 2013 and

January 2019, he regularly worked six days a week for a total of 66 hours (11 hours a day). *Id.* ¶ 5. From June 2013 to December 31, 2016, he received $480 per week. *Id.* ¶ 6. Beginning on January 1, 2017 through December 31, 2018, Cuaya received a base hourly rate of $13.00 that was increased to $18.00 on January 1, 2019. *Id.*

According to Cuaya, "there was never any understanding between defendants and any employee, including [himself], that the fixed weekly salary was intended to cover" the employees' overtime hours worked. *Id.* He also alleges that, when he began earning hourly wages, defendants consistently deducted a half hour for lunch, despite the fact that he was always required to work through his lunch break. *Id.* ¶ 8. Due to this practice of "time shaving," Cuaya contends that he was not paid for all hours for which he worked, including overtime hours. *Id.* Moreover, Cuaya alleges that he was never paid a spread of hours premium as required under NYLL, although he frequently worked shifts longer than 10 hours. *Id.*   ¶ 9.

As to other potentially "similarly situated" employees, Cuaya reports that he spoke with 10 coworkers about defendants' work and pay policies and, from these conversations and his personal observations, gleaned that other employees were subject to the same wage-and-hour policies as he was. *Id.* ¶¶ 2–3, 7–9. He contends that he "personally observed that it was [d]efendants' policy to pay below the statutory minimum wage to all employees," and that he witnessed other employees working for more hours than those for which they were paid due to defendants' practice of time shaving. *Id.* ¶¶ 7–8. Cuaya recalls that, during one conversation with his coworker, Gerardo, who allegedly worked at "[a]ll location[s], as needed,"

*id.* ¶ 2, Gerardo said: "it's the same thing, they take the meal breaks automatically, so we don't get paid for our overtime." *Id.* ¶ 11.  Another coworker, Jose Luis, spoke with Cuaya about "working so many hours without receiving overtime pay." *Id.* ¶ 12.  Cuaya also observed that other employees were similarly never paid a spread of hours premium when they worked shifts longer than 10 hours. *Id.* ¶ 9.

Fear of retaliation allegedly prevented Cuaya from complaining to his managers about his compensation, because he observed that one of his coworkers was fired within one week of making a similar complaint. *Id.* ¶ 13.  He alleges that he "never received a wage and hour notice as required under [NYLL]," and, based on his observations and conversations with coworkers, neither did any other employees. *Id.* ¶ 15.

### 2. Cuaya Has Made the Modest Factual Showing Required to Support Conditional Collective Action Certification of Kitchen Employees

Cuaya seeks to conditionally certify a collective of "all non-exempt employees, including cooks, food preparers, cashiers, counter persons, cleaning persons and delivery persons employed by defendants at any Bread and Butter location within the last six (6) years." Dkt. No. 64, Ex. 1 ¶ 1.  Defendants argue that Cuaya has not sufficiently demonstrated that any "similarly situated" individuals exist, including any employees other than cooks, or any employee who worked at a location other than the Fifth Avenue location. Def. Mem. at 8–18.  The Court finds that, although a more limited collective than that sought by Cuaya is appropriate here, he has provided sufficient factual detail to enable the Court to conclude at this preliminary

stage that he is similarly situated to other kitchen employees, including cooks, food preparers, porters, and dishwashers, at defendants' Bread & Butter restaurants.

### a. Similarly Situated Employees

Conclusory allegations and "unsupported assertions" are not sufficient to support a motion for conditional collective action certification. *Myers,* 624 F.3d at 555 (citation omitted). "Rather, plaintiffs must offer something of evidentiary value to demonstrate that similarly situated employees exist and, where plaintiffs fail to meet this minimal requirement, their motion for conditional collective action certification will be denied." *Hernandez v. City of New York,* No. 16-CV-3445 (RA), 2017 WL 2829816, at *4 (S.D.N.Y. June 29, 2017) (alterations omitted) (internal quotation marks omitted); *see also Silva v. Calle 8, LLC*, No. 12-CV-677 (ERK) (MDG), 2013 WL 6330848, at *3 (E.D.N.Y. Dec. 5, 2013) ("[W]here plaintiffs fail to provide either evidentiary support, such as affidavits or supporting documents, or specific factual allegations, courts routinely deny conditional certification.") (collecting cases). Plaintiffs consequently must provide factual detail or evidence beyond simply alleging that they observed or spoke with other similarly situated employees. *See, e.g., Huertero-Morales v. Raguboy Corp.,* No. 17-CV-2429 (JCF), 2017 WL 4046337, at *3 (S.D.N.Y. Sept. 12, 2017) ("[I]nformation regarding where or when [a plaintiff's] observations or conversations occurred . . . is critical in order for the Court to determine the appropriate scope of the proposed class and notice process.") (citation omitted); *Qi Zhang v. Bally Produce, Inc.,* No. 12-CV-1045 (FB) (JMA), 2013 WL 1729274, at *4 (E.D.N.Y. Apr. 22, 2013) (court "refuse[d] to

conditionally certify a collective action" where plaintiff "unwilling (or unable) to offer any evidence that other [employees] had similar duties and responsibilities as plaintiff").

Nevertheless, "the burden at the first stage of certification is low." *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18-CV-7854 (RA) (KHP), 2019 WL 1760154, at *6 (S.D.N.Y. Apr. 22, 2019). "The Court does not weigh the merits of the underlying claims at this stage." *Id.* (collecting cases). Rather, "[c]ourts in this Circuit [] commonly authorize[ ] the sending of collective action notices where plaintiff includes some probative information regarding similarly situated employees." *Silva*, 2013 WL 6330848, at *3. Specific factual allegations can include the names of similarly situated employees, their job titles, as well as information as to their duties and the hours they worked. *See, e.g., Gu*, 2014 WL 1515877, at *3; *Silva*, 2013 WL 6330848, at *3 (collecting cases). Where a plaintiff bases his assertions regarding similarly situated employees upon his own observations and conversations with other employees, courts have required details about these observations and conversations, such as where and when they occurred and the names of the employees involved. *See, e.g., Sanchez*, 2014 WL 465542, at *2 ("[W]here or when these observations or conversations occurred . . . is critical in order for the Court to determine the appropriate scope of the proposed class and notice process."). Without these details, "the Court is left with a list of generalized allegations [that are]. . . precisely the kind of unsupported assertions and conclusory allegations that courts in this District have found to be insufficient." *Id.*

It is also helpful, but not necessary, when a plaintiff "adduce[s] evidence beyond his own personal observations," which may be done through affidavits of other employees or other supporting documents. *Jeong Woo Kim v. 511 E. 5th St., LLC,* 985 F. Supp. 2d 439, 448–49 (S.D.N.Y. 2013) (collecting cases).

Here, Cuaya has made the "modest factual showing" that potential plaintiffs exist who are "similarly situated" to him. *Myers,* 624 F.3d at 555. In a sworn declaration, he asserts that he personally spoke with at least 10 other employees about defendants' wage-and-hour policies. Pl. Dec. ¶¶ 2, 10–12, 14. Several of these employees described similar experiences to Cuaya's with respect to time shaving and lack of overtime pay. *Id.* ¶¶ 11–12. His declaration includes details such as the first names and positions of the employees with whom he had conversations, as well as the timing and circumstances of some of the conversations. *Id.* ¶¶ 11–12, 14. That Cuaya only names these employees by first name is "not necessarily a shortcoming." *Zamora v. L Plus L Prods. LLC,* No. 19-CV-1506 (GBD)(RWL), 2019 WL 5460559, at *5 (S.D.N.Y. Oct. 15, 2019) (conditional certification granted where plaintiff's affidavits identified similarly situated employees primarily by first names, nicknames, or nationalities) (citing *Guzman v. VLM, Inc.,* No. 07 CV 1126, 2007 WL 2994278, at *1 n.2-3 (E.D.N.Y. Oct. 11, 2007)). Other courts have found similar assertions to those made by Cuaya to be "sufficient to meet [p]laintiff's burden at this stage." *Leonardo v. ASC, Inc.,* No. 18-CV-3657 (VEC), 2018 WL 5981996, at *2 (S.D.N.Y. Nov. 14, 2018) (collective of kitchen staff certified based on plaintiff's sworn affidavit describing conversations with other kitchen employees,

including timing and circumstances); *see also Campos v. Lenmar Rest. Inc.*, No. 18-CV-12359 (KPF), 2019 WL 6210814, at *4 (S.D.N.Y. Nov. 21, 2019) (collective of bussers and servers certified based on plaintiff's affidavit describing defendants' violations against him, combined with specific details of conversations with named coworkers).

Cuaya also argues that defendants' time-keeping records and the declarations submitted by Lee, Cho, Back, and Kim themselves support the contention that other non-exempt employees suffered the same violations of the FLSA. In particular, each of the aforementioned declarants stated that, at each Bread & Butter location, employees "received a thirty minute break during each of their shifts." Pl. Reply at 2 (citing Lee Dec. ¶ 13; Cho Dec. ¶ 13; Back Dec. ¶ 13; C. H. Park Dec. ¶ 13). As defendants' time-keeping and pay records demonstrate, however, Cuaya was consistently deducted *one hour* from his timekeeping records per day. *See* Pl. Reply Ex. H. Although only Cuaya's hours are visible in defendants' records submitted to the Court, the generalized nature of defendants' statements, combined with Cuaya's experiences, observations, and conversations with coworkers, strengthens the factual nexus between Cuaya's experience and that of other potential plaintiffs. *See Francis v. A & E Stores, Inc.,* No. 06-CV-1638 (CS)(GAY), 2008 WL 4619858, at *3 (S.D.N.Y. Oct. 16, 2008) (defendants' own statements used at conditional certification stage as support for showing plaintiff as "similarly situated" to other employees); *see also Taveras v. D & J Real Estate Mgmt. II, LLC,* 324 F.R.D. 39, 41 (S.D.N.Y. 2018) ("At this stage of the litigation,

Plaintiffs need only proffer substantial allegations of a factual nexus between them and potential opt-in plaintiffs with regard to an FLSA violation.") (citing *Hallissey v. Am. Online, Inc.*, No. 99-CV-3785 (KTD), 2008 WL 465112, at *2 (S.D.N.Y. Feb. 19, 2008) (key question at conditional certification stage is "whether plaintiffs are similarly situated with respect to their allegations that the law has been violated")).

Although defendants take issue with Cuaya's reliance on one declaration, which they describe as "replete with undated anecdotal hearsay and ambiguous observations," Def. Mem. at 1, "[o]ther courts have granted conditional certification on similar records." *Islam v. LX Ave. Bagels, Inc.,* No. 18-CV-04895 (RA)(RWL), 2019 WL 5198667, at *6 (S.D.N.Y. Sept. 30, 2019) (collecting cases); *see also Hernandez v. Bare Burger Dio Inc.*, No. 12-CV-7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (courts "routinely grant[ ] conditional collective certification based solely on the personal observations of one plaintiff's affidavit"). Additionally, at this preliminary stage, "courts regularly rely on plaintiffs' affidavits and hearsay statements in determining the propriety of sending notice." *Salomon v. Adderley Indus., Inc.,* 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012).

Nevertheless, the Court agrees with defendants' view that the proposed collective is overbroad. *See* Def. Mem. at 16–18. It is true that courts in this Circuit "routinely find employees similarly situated despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice." *Guaman v. 5 M Corp.*, No. 13-CV-3820 (LGS), 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23,

2013) (internal quotation marks and citations omitted) (collecting cases).  Here, however, each of the 10 employees Cuaya names as people with whom he has had specific conversations about wage-and-hour policies is a kitchen employee, except for one employee characterized as a porter/delivery worker.  *See* Pl. Dec. ¶ 2 (positions include porter, food preparer, cook, dishwasher, sandwich preparer, salad preparer, and porter/delivery).  Cuaya "offers no specific conversations, names, or other details to show that employees other than kitchen staff were part of a common policy that violated the FLSA."  *Leonardo,* 2018 WL 5981996, at *3.  Rather, the only statements Cuaya makes with respect to non-kitchen staff are conclusory allegations that "other employees were also required to work for hours for which they were not paid" and that "no employees . .  were ever paid a spread of hours premium."  Pl. Dec. ¶¶ 8–9.  "[E]ven under the low bar set by conditional certification," these allegations are not sufficient to meet his burden.  *Campos*, 2019 WL 6210814, at *4.

Moreover, the Court has no basis upon which it can "fairly infer" that employees outside of the kitchen, who did not serve in roles similar to Cuaya's, worked similar shifts or hours as he did.  *Aguilo,* 2020 WL 3545558, at *5 (citation omitted).  Therefore, the Court cannot "draw the [] inference" that any employees in those roles "suffer[ed] the same violations of the FLSA."  *Id.* (citation omitted) (collecting cases).  At this stage, Cuaya has not met his burden of "show[ing] that there is at least some common question of law or fact that justifies including" non-kitchen employees, such as cashiers, counter persons, or cleaning persons, "in the

collective." *Pequero,* 2020 WL 4016756, at *9 (citing *Scott,* 954 F.3d at 516). His

conclusory allegations fail to make even a modest showing that any employees—

other than kitchen employees—were subject to similar conditions. *Leonardo,* 2018

WL 5581996, at *3 (citing *Reyes v. The Picnic Basket, Inc.,* No. 18-CV-140 (DCF),

Dkt. 39, at 3–4 (S.D.N.Y. May 22, 2018); *Yang v. Asia Market Corp.,* No. 17-CV-6886

(VEC), 2018 WL 2227607, at 2 (S.D.N.Y. April 3, 2018)). Accordingly, "the Court

will grant the collective action only insofar as [kitchen employees, including cooks,

food preparers, porters, and dishwashers] are concerned." *Campos,* 2019 WL

6210814, at *4.[4]

### b. Defendants' Single Enterprise Status

"When evaluating whether a group of distinct but closely affiliated entities

should be treated as a single employer for FLSA purposes, courts consider the

interrelation of operations, including whether there is centralized control of labor

relations, common management, and common ownership or financial

control." *Taveras,* 324 F.R.D. at 41 (citing *Juarez v. 449 Restaurant, Inc.*, 29 F.

Supp. 3d 363, 367 (S.D.N.Y. 2014)). In *Juarez,* for example, the district court found

sufficient allegations that defendants operated as a single integrated enterprise on

the basis of allegations that the restaurants in question were operated, owned, and

managed by the same individual, used the same or similar décor and menus,

required employees to wear the same uniform, and shared a website. *See Juarez,* 29

F. Supp. 3d at 367. However, when disputes arise as to the "single enterprise status

---

[4] Thus, the Court will exclude "cashiers, counter persons, cleaning persons and
delivery persons," as proposed by Cuaya.

of defendants at the conditional certification stage," courts "generally defer the analysis to the second stage of certification," as it is a "'complicated and fact-specific inquiry,' which is not properly determined at the collective action certification stage." *Lijun Geng v. Shu Han Ju Rest. II Corp.,* No. 18-CV-12220 (PAE) (RWL), 2019 WL 4493429, at *7 (S.D.N.Y. Sept. 9, 2019) (quoting *Uraga v. Amici 519 LLC,* No. 17-CV-3547 (ALC), 2018 WL 3579850, at *4 (S.D.N.Y. July 25, 2018)).

Here, Cuaya's allegations are sufficient to establish a single enterprise for purposes of conditional certification.  Cuaya contends that individual defendants Terence Park and Byung Il Park are owners and principals of the corporate defendants, have authority to fire and hire employees, control compensation rates and methods, and have "the authority to effect any changes to the quality and terms of employees' employment."  Compl. ¶¶ 10–11.  He further alleges that (a) defendants' employees were commonly assigned to "any Bread & Butter location, as needed," Pl. Dec. ¶ 1; (b) ingredients and supplies were commonly transferred between Bread & Butter locations, *id.* ¶ 4; (c) "all Bread & Butter restaurants sell the same or similar menu items," Pl. Mem. at 5 (citing *id.*, Ex. G); and (d) defendant Terence Park is the common owner and operator of all Bread & Butter locations, *id.* at 3 (citing *id.,* Ex. B).  As to the locations on 56th Street, 34th Street, Seventh Avenue, and Fifth Avenue, Cuaya makes the following additional allegations: (e) defendant Byung Il Park is the named principal on the liquor licenses, *id.* at 4 (citing *id.,* Ex. C); (f) the restaurants are jointly advertised on the Bread & Butter

website, *id.* at 4 (citing *id.,* Ex. D); (g) the restaurants use the same logo, with a distinct font, and the slogan "Habits to be Made," *id.* (citing *id.*, Ex. E).

Defendants argue that Cuaya is not similarly situated to employees of any of the other four entities named in this action, as he only worked at one Bread & Butter location within the relevant FLSA statute of limitations period (the Fifth Avenue location), although he was employed at a separate Bread & Butter location from 2010 to 2013 (419 Park Avenue South), "when it was then owned and operated by a non-party to this action."  Def. Mem. at 2.  However, "[c]ourts often authorize notice to employees of restaurant locations where the named plaintiff did not work at all, as long as there is sufficient evidence that those employees were subject to the same allegedly unlawful policies."  *Islam,* 2019 WL 5198667, at *5 (quoting *Juarez*, 29 F. Supp. 3d at 370).  Defendants further argue that each Bread & Butter location is "independently managed by different managers," and that they "used different payroll systems, utilized different accounts payable personnel, employed different pay practices and policies, and had kitchens that were completely separate and independent of each other."  Def. Mem. at 9 (citing Lee Decl. ¶¶ 2, 5–11; Cho Decl. ¶¶ 2, 5–11; Back Decl. ¶¶ 2, 5–11; Park Decl. ¶¶ 2, 5–11; Kim Decl. ¶¶ 1, 4, 9–10)).  However, "[c]ourts should not weigh the underlying merits of the case on an application for conditional certification."  *Cruz v. Ham N Eggery Inc.,* No. 15-CV-3228 (JBW)(MDG), 2016 WL 4186967, at *3 (E.D.N.Y. Aug. 8, 2016).  Where, as here, a plaintiff makes an "adequate factual showing" to support the inference that separate locations act as a single integrated enterprise, courts in this Circuit

routinely reject allegations in defendants' affidavits as a basis for denying collective

action certification.  *Id.* (collecting cases).[5]

It is also true, as Defendants contend, that "the mere fact that all five

locations use the same trade name and four out of five locations share a single

website is insufficient to meet plaintiff's burden."  Def. Mem. at 11.  In particular,

although these factors may indicate that the restaurants share a "'common

purpose,' they are insufficient to establish 'an interrelation of operations of

centralized control of labor relations with plaintiffs' identified direct corporate

---

[5] In light of this principle, the Court also declines to exempt any specific defendant from inclusion in the certification.  For example, defendants argue that VI Development Group, LLC "does not even have any direct or indirect ownership interest in the store."  Def. Mem. at 1.  Defendant Food & Beyond also asserts that, although it was "given the right to use the Bread & Butter name," it has "no relationship" with any of the other defendants.  Declaration of Jimmy Kim dated March 18, 2020 (Dkt. No. 76) ¶¶ 3–4.  Cuaya's factual allegations dispute these contentions, as he asserts that VI Development Group, LLC "operates all of the Restaurant's locations" Compl. ¶ 9(a), and that Food & Beyond "owns and operates" the Bread & Butter location at 419 Park Avenue South," where he worked from 2010 to 2013.  *Id.* ¶ 9(g).  The Court will not resolve these factual disputes in this Memorandum Order because, "at this stage of the proceedings, it is not incumbent on the Court to resolve disputes or make credibility determinations."  *Mogollan v. La Abundancia Bakery & Rest. Inc.,* No. 18-CV-3202 (GBD)(SDA), 2019 WL 5693375, at *6 (S.D.N.Y. Nov. 4, 2019) (citing *Juarez*, 29 F. Supp. 3d at 369–70).  "At the preliminary certification stage, all inferences are drawn in favor of the plaintiff, and the Court does not resolve factual disputes."  *Zhenkai Sun v. Sushi Fussion Express, Inc.,* No. 16-CV-4840 (WFK)(LB), 2018 WL 1168578, at *4 (E.D.N.Y. Mar. 6, 2018) (citation omitted).  Therefore, defendants "may not defeat a court's determination that [p]laintiffs are similarly situated by submitting their own affidavits.'"  *Magollan,* 2019 WL 5693375, at *6 (citing *Colon v. Major Perry Street Corp.,* No. 12-CV-03788 (JPO), 2013 WL 3328223, at *5 (S.D.N.Y. July 2, 2013)); *see also Zhenkai Sun,* 2018 WL 1168578 at *4 ("This motion is not the time to consider the [o]bjecting [d]efendants' contradictory factual assertions[.]"); *see also Damassia v. Duane Reade, Inc.,* No. 04-CV-8819 (GEL), 2006 WL 2853971, at *4 (S.D.N.Y. Oct. 5, 2006) (declining to consider affidavits submitted by defendants where plaintiffs had not yet had opportunity to depose affiants).

employer." *Id.* (citing *Yeh v. Han Dynasty,* No. 18-CV- 6018 (PAE), 2019 WL

633355, at *8 (S.D.N.Y. Feb. 14, 2019)).   Here, however, Cuaya's complaint supports

an inference of interrelated operations and centralized control through allegations

that Terence Park and Byung Il Park both "exercise[] the power" and "delegate[] to

managers and supervisors the power to" hire and fire employees, and that they

"supervise and control employee work schedules and conditions of employment, and

determine the rate and method of compensation of employees[.]"  Compl. ¶¶ 11–12.

Despite defendants' arguments regarding the alleged differences between locations,

"[t]aken together," Cuaya's allegations that Defendants operate five restaurants

with a common trade name, which have similar menus and "identical menu items,"

"interchangeable supplies and employees," and are owned and operated by the

individual defendants, who have authority to exercise control over employment

decisions, "plausibly suggest the existence of a single integrated enterprise." *Uraga,*

2018 WL 3579850, at *4; Compl. ¶¶ 8(a)–(f); *see also Leonardo,* 2018 WL 5981996,

at *2 (plaintiff offered sufficient evidence that three restaurants acted as single

integrated enterprise where they were owned by a single person, one defendant was

listed as principal on liquor license for two restaurants, and plaintiff alleged that

restaurants occasionally shared supplies and employees).

     Cuaya has thus made a "modest showing that [the Restaurants] share

common ownership and treat employees, equipment, and supplies interchangeably."

*Geng*, 2019 WL 4493429, at *14.  Accordingly, "[f]or now, [Cuaya has] proffered

sufficient facts to support [his] allegation that the [] named Defendants may have

operated as a single integrated enterprise." *Taveras,* 324 F.R.D. at 41. "At a later stage in this litigation, after further discovery, the Court will determine whether [Cuaya has] in fact proven that the [d]efendants are a single integrated enterprise." *Id.*

## B. Notice and Consent Form

Having determined that Cuaya has met his burden for initial collective action certification, the Court may, in its own discretion under the FLSA, "implement § 216(b) . . . by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers*, 624 F.3d at 554 (internal citations and quotation marks omitted). Cuaya has submitted a proposed notice of this FLSA action and consent form to the Court for its consideration and requests that the Court approve several additional measures, including that: (1) the notice be sent to potential opt-in plaintiffs employed by defendants within the last six years; (2) completed consent forms be sent directly to Cuaya's attorney; (3) the notice be posted at defendants' places of business; and (4) potential plaintiffs be given a 60-day opt-in period. Defendants object to several of these requests and additionally seek to include contact information for defense counsel in the notice and consent form. I will address each of these issues in turn.

### 1. The Notice Period is Limited to Three Years

Cuaya seeks to send notice to potential opt-in plaintiffs who were employed by defendants within six years of the date of the complaint. Pl. Mem. at 7; Pl. Reply at 10–11. Defendants object to this time frame, arguing that the notice period

should be limited to three years because the maximum statute of limitations for willful violations of the FLSA is three years.  Def. Mem. at 18–19.

As an initial matter, under the FLSA, the statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  "An FLSA action is commenced for a named plaintiff upon the date the complaint is filed, and for an opt-in plaintiff in a collective action upon the date written consent is filed with the court." *Geng*, 2019 WL 4493429, at *16 (citing 29 U.S.C. § 256(a)–(b)). Despite the fact that the statute of limitations runs until a potential opt-in plaintiff formally joins the suit, "at the conditional certification stage, courts frequently authorize a more inclusive notice period that dates back to three years before the filing of the original complaint."  *Errickson v. Paychex, Inc.*, No. 19-CV-6347 (EAW), 2020 WL 1307682, at *11 (W.D.N.Y. Mar. 19, 2020) (internal quotation omitted).

Courts in the Second Circuit "have approved both three—and six-year notice periods, depending on the facts."  *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 563 (S.D.N.Y. 2013) (collecting cases).  Although "some courts have allowed court-authorized notice to potential members of an FLSA collective to reference a six-year period, others have found that lengthening the period may be cause for confusion and inefficiency."  *Pequero,* 2020 WL 4016756, at *12 (internal citations omitted); *see also, e.g., Perez v. De Domenico Pizza & Restaurant, Inc.*, 204 F. Supp. 3d 494, 496 (E.D.N.Y. Sept. 6, 2016) ("As to potential plaintiffs who are time-barred from relief under the FLSA, there is no purpose in sending such

employees a notice informing them that (1) there is a pending opt-in lawsuit, (2) they may not opt in, and (3) they may later receive another notice should their status change due to [Rule 23] class certification.") (internal quotation marks and citation omitted).  On the other hand, six years is sometimes considered appropriate where "the potential class is not very large and the notice itself mitigates possible confusion."  *Rojas v. Kalesmeno Corp.*, No. 17-CV-164 (JCF), 2017 WL 3085340, at *6 (S.D.N.Y. July 19, 2017) (citing *Benavides*, 166 F. Supp. 3d at 481); *see also Winfield v. Citibank, N.A.,* 843 F. Supp. 2d 397, 411 (S.D.N.Y. 2012) (authorizing six-year notice period where "[t]he notice adequately describe[d] that there are claims under New York law and that these claims, unlike the FLSA claims, have a six-year statute of limitations").

Here, although Cuaya argues that the Court should authorize a six-year notice period because his claims arise under both the FLSA and NYLL and he "anticipates making a Rule 23 class certification motion," Pl. Reply at 11, a three-year notice period is appropriate.  Significantly, Cuaya's proposed notice does not adequately delineate the different statutes of limitations that apply to claims under the FLSA (3 years) and NYLL (6 years).  However, even if it did, the proposed notice contains only a one-sentence explanation that it "applies only to the FLSA collective action claims, not to the class action claim brought under the NYLL."  Pl. Mem., Ex. 1 at 1.  To permit a six-year notice period for a proposed notice that relates only to claims that are governed by a three year statute of limitations would certainly cause confusion for employees who are ineligible for the FLSA collective action but

nevertheless receive an opt-in notice that professes not to relate to any NYLL claims.

Moreover, the record does not shed light as to whether the number of potential plaintiffs is unlikely to be very large, another factor in assessing the possible efficiencies in gathering information about potential plaintiffs with NYLL claims at this stage.  A three-year period will avoid inefficiency that may result from "providing notice to potential opt-in plaintiffs with claims that may turn out to be time-barred or confusing employees about disparate claims with different statutes of limitation."  *Jing Fang Luo v. Panarium Kissena Inc.*, No. 15-CV-3642 (WFK)(ST), 2016 WL 11263668, at *13 (E.D.N.Y. Nov. 23, 2016), *adopted by* 2017 WL 1216571 (Mar. 30, 2017).  Accordingly, the Court directs that notice be sent to all kitchen employees who worked at defendants' restaurants in the three-year period before the filing of the complaint.

### 2.  Consent Forms May Be Sent to Cuaya's Attorney

Cuaya also requests that the Court direct that opt-in forms be mailed to his counsel, as opposed to the Clerk of Court, because "[r]equiring opt-in claimants to file their forms with the Clerk frequently results in extended delays, prohibiting Plaintiff's counsel from effectively conducting investigation and representing opt-in plaintiffs who frequently require immediate guidance."  Pl. Reply at 13.  Defendants object to the involvement of Cuaya's counsel in managing communications with potential plaintiffs and advocate instead for "a neutral third-party administrator [to] oversee the distribution of the notice."  Def. Mem. at 21.

"Courts in this District are split on [the] issue" of whether potential opt-in plaintiffs should be directed to send their consent forms to the Clerk of Court." *Martin*, 2016 WL 30334, at *18. Some have required "consent forms to be mailed to the Court because of concerns that a contrary ruling might discourage opt-in plaintiffs from retaining their own counsel . . . and others [have] approv[ed] notices that required consent forms be sent to plaintiffs' counsel." *Hernandez v. Fresh Diet Inc.,* No. 12-CV-4339 (ALC) (JLC), 2012 WL 5936292, at *2 (S.D.N.Y. Nov. 21, 2012) (internal citations omitted). A "majority of courts," however, "have directed opt-in plaintiffs to mail the consent forms to plaintiffs' counsel." *Martin*, 2016 WL 30334, at *18; *see also Guo*, 2014 WL 5314822, at *5 (mailing notice forms to plaintiff's counsel "particularly appropriate" where notice "explicitly advises potential opt-in plaintiffs that they may consult or retain another attorney," serving to "mitigate[e] concerns that putative class members may be discouraged from retaining their own counsel").

Here, the proposed notice clarifies that potential opt-in plaintiffs are entitled to seek independent counsel. Pl. Mem., Ex. 1 at 2 ("You are not required to have Lee Litigation Group, PLLC represent you."). Therefore, the Court sees "no reason to depart from the majority approach" directing opt-in plaintiffs to mail the consent forms to plaintiff's counsel. *Martin*, 2016 WL 30334, at *18. The Court accordingly approves Cuaya's request that the notice direct potential plaintiffs to mail consent forms directly to his counsel and indicate whether they agree to be represented by plaintiff's counsel or will otherwise retain separate counsel or proceed *pro se*.

25

### 3. Consent Forms Should Be Posted at Defendants' Places of Business

Cuaya requests that the notice and consent forms be posted at defendants' places of business.  Pl. Mem. at 2.  Defendants do not appear to object to this request.  "Courts routinely approve the posting of notice on employee bulletin boards and in common employee spaces."  *Aguilo,* 2020 WL 3545558, at *8 (citing *Whitehorn,* 767 F. Supp. 2d at 449.  Courts have approved such postings even where the notice will be mailed to prospective plaintiffs because doing so "maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in."  *Mathew v. SMZ Impex, Inc.*, No. 17-CV-9870 (JPO), 2019 WL 4409442, at *5 (S.D.N.Y. Sept. 16, 2019) (citing *Benavides,* 166 F. Supp. 3d at 487 (internal citation omitted)); *see also Tanski,* 2017 WL 10858910, at *19 (E.D.N.Y. Mar. 31, 2017) (collecting cases); *cf. Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015) ("We recognize that a posting of notice in the workplace is not always an effective or even appropriate way to reach similarly situated employees, and that such a posting may have negative effects on the workplace environment.").  Absent any objection from defendants, the Court therefore grants Cuaya's request that they be required to post the notice and opt-in form in a common, non-public employee space at their Bread & Butter restaurants.

### 4. The 60-Day Opt-In Period is Approved

Though not explicitly requested in his motion papers, Cuaya appears to request a 60-day opt-in period for potential plaintiffs to join the collective action based on language in the proposed notice.  Pl. Mem., Ex. 1 at 3 ("To join this

lawsuit, you must sign a 'Consent to Sue' form, which is enclosed with this Notice, and send it on or before [60 days from the date notice is sent out] . . . ."). Defendants do not object to this time frame, but argue that the period should be 60 days "at most."  Def. Mem. at 19.  The Court therefore approves the 60-day opt-in period, as other courts have found to be appropriate in similar cases.  *See, e.g., Racey v. Jay-Jay Cabaret, Inc.*, No. 15-CV-8228 (KPF), 2016 WL 3020933, at *7 (S.D.N.Y. May 23, 2016).

### 5. Cuaya's Notice Must Include Contact Information for Both Plaintiff's and Defendants' Counsel

Defendants request that the notice should include contact information for defense counsel.  Def. Mem. at 20.  Cuaya does not appear to object to this request. Consistent with the Court's directive that opt-in forms be sent directly to Cuaya's counsel, the notice of collective certification should include contact information for both Cuaya's and defendants' counsel.  The Court agrees with other "courts in this Circuit[, which] have generally concluded" that the contact information of defendants' counsel "is appropriate for inclusion in a notice of collective action." *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015) (citations omitted); *see also Martin*, 2016 WL 30334, at *17; *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12-CV-8629 (KPF), 2013 WL 5211839, at *7 (S.D.N.Y. Sept. 16, 2013).

Contact information for defense counsel should be set apart in two separate sections.  *See Mendoza,* 2013 WL 5211839, at *7 (approving notice that sets out contact information for each counsel in separate sections); *Whitehorn*, 767 F. Supp.

2d at 451 (approving inclusion of defense counsel's contact information with requirement that it be placed in separate section entitled "Attorneys for Defendants").  The first section should state that, if a potential plaintiff joins this suit and agrees to be represented by the named plaintiff through his attorney, he or she will be represented by Lee Litigation Group PLLC, and provide plaintiffs counsel's full names, mailing address, and phone number.  The second section should state that defendants in this case are represented by Littler Mendelson, P.C., provide counsel's full names, mailing address, and phone number, and include the following language: **<u>If you decide to join this case, you should not contact the defendants' lawyer but instead rely on your counsel to do so</u>**.  *See, e.g., Benevides,* 166 F. Supp. 3d at 487 (citing *Cohan v. Columbia Sussex Mgmt., LLC,* No. 12-CV-3203 (JS) (AKT), 2013 WL 8367807, at *13 (E.D.N.Y. Sept. 19, 2013)) (approving similar language in light of opposing counsel's obligation to avoid unauthorized contact with represented parties).

### 6.  The Parties Should Confer on Outstanding Issues Related to the Content, Form, and Distribution of the Notice

Defendants request that additional language be included in the notice, but suggest that the Court direct the parties to meet and confer regarding the content, form, and distribution of the notice.  Def. Mem. at 19.[6]  Cuaya agrees that the

---

[6] For example, Defendants argue that, "to ensure impartiality and so that recipients are not improperly encouraged to join the action, the notice should include a statement on the first page, such as the following: 'Defendants do not believe you are entitled to participate in this case and will make a motion before the Court at the appropriate time seeking an order dismissing you from this case in the event you complete the form at the end of this Notice.'"  Def. Mem. at 20–21.  (citing *Hamadou v. Hess Corp.,* 915 F. Supp. 2d 651, 669 (S.D.N.Y. 2013)).  The Court

parties should be given the opportunity to resolve any outstanding issues with respect to the content of the notice without judicial intervention.  Accordingly, the parties are directed to meet and confer to negotiate the terms of the notice in accordance with the requirements outlined in this Memorandum Order.

## C. Disclosure of Contact and Personal Information of Potential Collective Action Members

Cuaya requests that the Court order defendants to produce, within 10 days of its Order, a list of all non-exempt employees who were employed by defendants at any point in the six years prior to the entry of the Order.  Pl. Mem. at 13–14.  He requests that this list be produced in Excel format with the following information: names, titles, compensation rates, last known mailing addresses, email addresses, all known telephone numbers, and dates of employment.  *Id.* at 14.  Cuaya also requests that defendants produce the Social Security numbers of these potential plaintiffs, with Cuaya stipulating to their confidentiality, so that his counsel can use them to perform a skip trace for all notices returned as undeliverable to the extent their names and contact information are insufficient to effectuate notice.  *Id.* He asserts that such a measure is necessary because a large percentage of consent forms typically are returned as undeliverable.  *Id.*  Although the proposed timing for this production is not entirely clear, it appears that Cuaya requests that defendants produce the Social Security numbers now for use at a later date if necessary.

---

declines to rule on the inclusion of such language at this time, and instead directs the parties to confer to seek a resolution on this and other outstanding matters.

Although defendants believe that the production of any information beyond the potential opt-in plaintiffs' names and mailing addresses would "unnecessarily compromise employee privacy," Def. Mem. at 22, "[c]ourts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action."  *Martin*, 2016 WL 30334, at *19 (collecting cases); *see also Yuefeng Shi v. TL & CG Inc.,* No. 19-CV-8502 (SN), 2020 WL 4586359, at *5 (S.D.N.Y. Aug. 10, 2020) ("Courts in this Circuit have held that disclosure of employee contact information is relevant and appropriate in connection with conditional collective action certification.") (citing *Tate v. WJL Equities Corp.*, No. 13-CV-8616 (JLC), 2014 WL 2504507, at *2 (S.D.N.Y. June 3, 2014)). Defendants have not demonstrated that the production of the requested information would be either "unduly burdensome [or] disruptive" and the Court sees no reason why this would be the case.  *Jacob v. Duane Reade, Inc.,* No. 11-CV-160 (JPO), 2012 WL 260230, at *10 (S.D.N.Y. Jan. 27, 2012) (ordering defendants to provide contact information because such information "would be neither unduly burdensome nor disruptive") (citing *Sexton v. Franklin First Fin., Ltd.,* No. 08-CV-4950 (JFB) (ARL), 2009 WL 1706535, at *13 (E.D.N.Y. June 16, 2009)).  Moreover, such production would aid in "facilitat[ing] the speedy collection of data . . . [and] the opt-in process." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, No. 09-CV-1148 (LBS), 2010 WL 2362981, at *3 (S.D.N.Y. 2010).

The Court, therefore, grants Cuaya's request for all known email addresses and telephone numbers of all potential plaintiffs within the conditionally certified class, as well as their names, titles, compensation rates, last known mailing addresses, and dates of employment. However, because the Court has only approved notice of the conditional collective action as to kitchen employees, including cooks, food preparers, porters, and dishwashers, who worked at defendants' restaurants within three years of the date of Cuaya's complaint, Cuaya's request for contact information is granted only as to these employees.

As to the timing of the production, defendants contend that a 10-day deadline is impracticable. Def. Mem. at 22. They request at least 30 days to produce the requested information, particularly in light of the fact that many businesses have been suspended due to the COVID-19 public health crisis (including their own). *Id.* By virtue of the extraordinary circumstances surrounding the COVID-19 pandemic as well as the fact that other courts have found 30 days to be appropriate generally, *see, e.g., Ballinger v. Adv. Magazine Publishers, Inc.,* 13-CV-4036 (HBP), 2014 WL 7495092, at *8 (S.D.N.Y. Dec. 29, 2014), the Court finds 30 days to be reasonable in this case.

Finally, "[a]lthough [] defendants do not specifically oppose the request to produce [S]ocial [S]ecurity numbers, [the Court] nevertheless conclude[s] that it is unnecessary to require that disclosure at this time." *Ji Li v. Ichiro Rest. Inc.*, No. 14-CV-10242 (AJN)(JCF), 2015 WL 6828056, at *5 (S.D.N.Y. Nov. 5, 2015). "While, in light of privacy concerns, courts in this District typically decline to compel

production of [S]ocial [S]ecurity numbers . . . such discovery is often permitted where demonstrably necessary to effectuate notice." *Martin*, 2016 WL 30334, at *20 (citations omitted).

Here, the Court declines to approve production of the Social Security numbers for the potential collective action members before Cuaya has demonstrated, with specificity, the need for such sensitive information. *See, e.g., Park v. FDM Grp. Inc.,* No. 16-CV-1520 (LTS)(SN), 2019 WL 2205715, at *7 (S.D.N.Y. May 22, 2019) ("Given privacy concerns, [social security numbers] should be produced only when the plaintiff has demonstrated that names and contact information are insufficient to effectuate notice"); *Garcia,* 102 F. Supp. 3d at 551 (denying request for Social Security numbers "for the purpose of using a 'skip trace' service to contact employees whose mailings are returned as undeliverable," finding that "it is premature to require such information for the entire group when it is necessary only for what may be a small subset who cannot be reached" and providing that "this issue should revisited" when there is more information about "the efficacy of whatever measures are chosen to reach the similarly situated employees"). Cuaya's request for production of Social Security numbers is thus denied without prejudice to renewal upon a showing that this information will facilitate the opt-in process. *See, e.g., Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 60 (S.D.N.Y. 2009) ("The Court does not see the need to direct the disclosure of [S]ocial [S]ecurity numbers at this stage. If Plaintiffs find that a large number of

notices are returned as undeliverable, the Court can consider the matter at that time.").

## D. Tolling of the Statute of Limitations is Denied

Finally, Cuaya requests that the Court toll the FLSA statute of limitations "until such time that they are able to send notice to potential opt-in plaintiffs." Pl. Mem. at 15. Defendants contend that such tolling is premature, as those individuals "do not have a case or controversy before this Court," and Cuaya has not established the presence of "exceptional circumstances" in this case to justify equitable tolling. Def. Mem. at 23.

The statute of limitations for a plaintiff in an FLSA collective action typically "runs when he or she files written consent with the court electing to join the lawsuit, not when the named plaintiff files the complaint." *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (citing 29 U.S.C. § 256(b)). "To avoid inequitable circumstances," courts use equitable tolling "to extend the statute of limitations beyond the time of expiration as necessary." *Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996)). "To apply equitable tolling, the Court must find that a plaintiff has satisfied two strict conditions: (1) that extraordinary circumstances prevented the plaintiff from timely filing his or her claim, and (2) that the plaintiff pursued his or her claim with reasonable diligence during the requested period." *Alvarado v. Villas Mkt. Place Inc.,* No. 19-CV-4036 (VEC), 2020 WL 91489, at *3 (S.D.N.Y. Jan. 8, 2020). "[T]he delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of

the equitable tolling doctrine." *SMZ Impex, Inc.,* 2019 WL 4409442, at *6 (citation omitted).  "[E]quitable tolling 'might [also] apply . . . where the defendant has concealed the existence of a cause of action from the plaintiffs.'" *Geng*, 2019 WL 4493429, at *18 (quoting *Mark v. Gawker Media LLC*, No. 13-CV-4347 (AJN), 2014 WL 5557489, at *2 (S.D.N.Y. Nov. 3, 2014)).

In this case, Cuaya has neither demonstrated unreasonable delay in the adjudication of his motion nor has he alleged that defendants actively concealed the existence of this cause of action from potential opt-in plaintiffs.  Cuaya moved for collective action certification on February 21, 2020.  *See* Dkt. No. 64.  Although he correctly observes that defendants were granted three extensions of time to file their opposition, and thus the motion did not become fully briefed until June 10, 2020, there has been "no substantial gap between the time the motion was filed and the date of this decision."  *Jian Wu v. Sushi Nomado of Manhattan, Inc*., No. 17-CV-4661 (PGG) (DF), 2019 WL 3759126, at *12 (S.D.N.Y. July 25, 2019).  Indeed, "the three months taken by this Court to decide the motion has been significantly less than the 11 months in *Mark*, where the court declined to find equitable tolling." *Id.*[7]  Cuaya has also failed to allege that any potential opt-in plaintiff exists "who

---

[7] In support of his argument that "the current trend of District Courts in this and other Circuits" has been to "grant[] requests for equitable tolling," Cuaya cites to *Ramos v. DNC Food Serv. Corp*., No. 19-CV-2967 (VSB), 2020 WL 2832776, at *9–10 (S.D.N.Y. June 1, 2020).  In *Ramos*, however, plaintiffs' motion for collective action certification was pending for nearly 11 months before it was decided.  *See id.* at *2 (plaintiffs filed motion for conditional certification on July 19, 2019, nearly 11 months before June 1, 2020 decision).  That case therefore hardly represents a "current trend" away from the prevailing practice in this District to forbear from granting equitable tolling at this stage in the litigation, absent extraordinary

intends to join the collective but who risks becoming time-barred or has been 'prevented in some extraordinary way from exercising his rights.'" *Islam*, 2019 WL 5198667, at *9 (citing *Johnson*, 86 F.3d at 12); *see also Liping Dai v. Lychee House, Inc.,* No. 17-CV-6197 (DF), 2018 WL 4360772, at *12 (S.D.N.Y. Aug. 29, 2018) (equitable tolling denied where plaintiffs failed to demonstrate that "any potential opt-in plaintiffs would actually be barred as the result of any delay occasioned by the Court or by the terms of the notice").

Accordingly, Cuaya's motion for equitable tolling is denied without prejudice to renewal by any opt-in plaintiff upon a showing that tolling is appropriate. *See Uraga,* 2018 WL 3579850, at *7 ("Should equitable tolling issues arise as to an opt-in plaintiff after conditional certification, *e.g.,* if Defendants argue that an individual plaintiff's action is untimely, the Court will then consider tolling.").

## III.  CONCLUSION

For the foregoing reasons, Cuaya's motion for conditional collective action certification is granted in part and denied in part.  The Court grants conditional collective action certification but only as to kitchen employees, including cooks, food preparers, porters, and dishwashers who worked at defendants' Bread & Butter restaurants, finding that Cuaya has made the factual showing required to infer that

---

circumstances, where a motion for collective action certification has been pending for fewer than 11 months. *See, e.g., Islam,* 2019 WL 5198667, at *9 (tolling denied where four months had passed since the filing of plaintiffs' motion); *Geng,* 2019 WL 4493429, at *17–18 (same); *Vasto v. Credico (USA) LLC,* No. 15-CIV-9298 (PAE), 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (five-month delay "not of a magnitude that would justify tolling"); *Mark*, 2014 WL 5557489, at *3 (11-month delay not sufficiently "extraordinary" to warrant equitable tolling).

these employees were subject to a common policy or plan that violated the law.  The Court accordingly directs that notice and consent forms be sent to all cooks, food preparers, porters, and dishwashers who worked at defendants' Bread & Butter restaurants within three years of the date of the filing of the complaint.

The Court further directs that the notice should instruct potential plaintiffs to mail consent forms to Cuaya's counsel and include contact information for both plaintiff's and defendants' counsel, as described in this Memorandum Order. Defendants are required to post the notice and consent forms in a common, non-public employee space at their Bread & Butter restaurants, and potential plaintiffs are granted 60 days to opt in to the collective action.

To facilitate notice to potential plaintiffs of this action and of their opportunity to opt-in as represented plaintiffs, the Court orders defendants to disclose to Cuaya's counsel the names, titles, compensation rates, last-known mailing addresses, email addresses, telephone numbers, and dates of employment of all potential plaintiffs within the conditionally certified collective action. Defendants must provide this information within 30 days of the date of this Order. The Court declines to require production at this time of the Social Security numbers of potential collective action members.  The Court also denies Cuaya's request to equitably toll the statute of limitations, without prejudice to renewal by opt-in plaintiffs on an individualized basis.

Finally, the Court directs Cuaya to revise the notice and consent form, consistent with this Memorandum Order, to confer with defendants in order to

agree on a final version of each form, and to submit final versions (as well any translations) for the Court's approval no later than **September 24, 2020.**

The Clerk of the Court is directed to close docket entry number 64 and mark it as granted in part and denied in part.

**SO ORDERED.**

Dated:  New York, New York
        September 10, 2020

_____
JAMES L. COTT
United States Magistrate Judge

37